### 21480. GRIGGS *et al. v.* CLEMONS.

DECIDED DECEMBER 21, 1931. REHEARING DENIED JANUARY 18, 1932.

*M. Felton Hatcher,* for plaintiffs in error.

*McClellan & Jacobs,* contra.

JENKINS, P. J. (After stating the foregoing facts.) Accepting as true, as we must on demurrer, all the allegations of fact in the answer of the defendants, including the allegations of fact in the previous suit filed by them against the plaintiff Clemons, which previous suit is attached to the present answer, we think the court properly sustained the demurrer to the answer.

That the relationship between an attorney and his client is one of

the highest trust is too well settled to require citation of authority, and is fully recognized. If the attorney is derelict in his duty, or betrays the confidence reposed in him, he is answerable therefor. The question here involved is not whether the attorney who represented the defendants in the previous litigation was guilty of a breach of trust, but whether the notes sued on were obtained by fraud, practiced by the plaintiff, and are therefore unenforcible. Whatever the attorney might have done, or whatever neglect he might have been guilty of, unless the plaintiff Clemons was a party to his dereliction or procured him to violate his duty toward his clients, the notes sued on could not be said to have been obtained by fraud on the part of Clemons. It is nowhere alleged in the answer that there was a secret agreement between Clemons and the lawyer, unknown to the defendants, whereby the lawyer was to induce the defendants to agree upon a settlement unfavorable to them, in return for which Clemons was to furnish the defendants money with which to pay the lawyer's fee. It is not alleged that the fee received by the lawyer was unfair or unreasonable, or more than he was justly entitled to receive for his services in filing the suit to restrain the sale of the land and the suit against Clemons for an accounting, and his services in negotiating the settlement. The most that does appear from the allegations of the petition is that the attorney was induced to agree to a settlement, and to procure the consent of the defendants to a settlement, which he might not otherwise have agreed to, by reason of the fact that Clemons was willing to advance to the defendants the money with which to pay the lawyer's fee. While the petition alleges that the defendants did not "fully" understand that when their consent was procured to the settlement the $500 was advanced by Clemons to pay their attorney, and that Clemons was thus in reality paying the fee of their attorney, it is not alleged, nor could it hardly be alleged, that they did not in fact know that the check which Clemons issued to them was indorsed by them under their own hands over to their own attorney, or that they were too ignorant to understand the purport of this plain and easily understandable phase of the transaction.

If the allegations of the answer are true, there can be no doubt but that the original transaction between the defendants and Clemons was usurious. The charging of usury did not, however, render

the original transaction a void one, but merely served to afford the defendants a remedy to defeat the collection of any interest if they saw fit to avail themselves of this legal right. Ga. L. 1916, p. 48; Michie's Code (1926), § 3438 (1). They might have been willing to pay the plaintiff some interest, or even the maximum amount which they could possibly legally charge under the provisions of the act of 1912 (Ga. L. 1912, pp. 144, 145; Michie's Code (1926), § 3436 (1), which authorizes the charging of interest at six per cent. per annum for the entire period of a loan which is to be paid in monthly installments, "aggregating the principal and interest for the entire period of the loan, and dividing the same into monthly installments." Indeed, the settlement as actually entered into seems to have had this act in mind, since the unpaid purchase price of the property, with interest at six per cent. for the period for which the loan was to run would have amounted, after deducting the sums paid prior to the litigations, to approximately the amount of the indebtedness acknowledged by the defendants in the settlement. The attorney who represented the defendants may have agreed to a bad settlement. Whether he did or not would, of course, depend upon whether the third person to whom the original notes had been transferred was a bona fide holder (and as to this the answer is silent), and, if so, upon whether or not Clemons was solvent, so that the claim of the defendants against him which grew out of his charging usury could be enforced and collected. As to this the answer is also silent. But whether the attorney made a bad settlement or a good one, and whether he was or was not induced to agree to a bad settlement by the fact that Clemons was willing to advance the money to pay his fee, the notes sued on could not be said to have been obtained by any fraud perpetrated by Clemons, since he was under no fiduciary relationship to the defendants but was necessarily dealing with them at arm's length, unless it appeared that Clemons procured and induced the consent of the attorney to the bad settlement, that is, procured him to betray his trust, by his offer to advance the money to pay the attorney's fee. This is not alleged in the answer, and the court therefore did not err in sustaining the demurrer.

*Judgment affirmed. Stephens and Bell, JJ., concur.*